IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-20099-02-JWL |
| ) | |
| WILLIAM T. MORRISON, JR., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

## **MEMORANDUM AND ORDER**

In March 2009, defendant William Morrison pleaded guilty to wire fraud and money laundering. The district judge assigned to the case at the time sentenced defendant to a term of imprisonment of 100 months, to be served consecutive to two state court sentences, three years supervised release, and $652,549.36 in restitution. He is presently incarcerated at FCI El Reno and his projected release date is January 20, 2023. This matter is before the court on defendant's second emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 269). As will be explained, the motion is denied.[1]

The Tenth Circuit has endorsed a three-step test for district courts to utilize in connection with motions filed under § 3582(c)(1)(A). *United States v. McGee*, \_\_\_

---

[1] After the court set initial deadlines for a response and reply to the motion, defendant filed a motion in opposition of any request by the government for an extension of time (doc. 273). Because the government timely filed its response, defendant's motion in opposition is moot.

F.3d___, 2021 WL 1168980, at *5 (10th Cir. Mar. 29, 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)).  Under that test, a court may reduce a sentence if the defendant administratively exhausts his or her claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id.*[2]  A court may deny compassionate-release motions when any of the three prerequisites is lacking and need not address the others.  *Id*. at *6.  But when a district court grants a motion for compassionate release, it must address all three steps.  *Id*.

*Extraordinary and Compelling Reasons*

Defendant argues that extraordinary and compelling reasons for immediate release from prison exist because his medical conditions (a BMI of 29; prediabetes; and a malfunctioning heart valve), his age (57), and the conditions of his confinement create a significantly increased risk of serious harm or death from the ongoing coronavirus pandemic. The government concedes that the defendant's medical conditions constitute extraordinary and compelling reasons sufficient for the court to consider early release under the statute.

*Applicable Policy Statements*

---

[2] The government concedes that defendant has exhausted his administrative remedies such that the court has jurisdiction to consider the motion on its merits.

The Sentencing Commission's most recent policy statement regarding sentencing reductions under § 3582(c)(1) is set forth in U.S.S.G. § 1B1.13. The policy statement expressly applies to motions filed by the Director of the BOP and was promulgated before the enactment of the First Step Act and, thus, before Congress authorized defendants to file their own motions. *McGee*, 2021 WL 1168980, at *10-11 "Although Congress's enactment of the First Step Act and its amendment of § 3582(c)(1) should have prompted the Sentencing Commission to revise the policy statement set forth in § 1B1.13, the Sentencing Commission has, to date, been unable to do so."). The Tenth Circuit has concluded, then, that the policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants. *McGee*, 2021 WL 1168980, at *12. In this case, defendant—not the BOP—filed his motion for compassionate release. Thus, the existing policy statement is not applicable to the motion and the court's discretion to consider whether any reasons are extraordinary and compelling is not constrained by § 1B1.13 or the Application Note to that policy statement. *Id.*

*Section 3553(a) Factors*

The government opposes defendant's motion on the grounds that the § 3553(a) factors weigh against early release in light of the nature and seriousness of the defendant's offenses and the need to provide just punishment for those offenses. On this point, the court agrees with the government and, for the reasons set forth below, concludes that the risk to defendant's health if he remains in custody (even considering the additional

3

conditions that the government has not conceded as extraordinary and compelling) is outweighed by the need for continued incarceration under the specific circumstances presented here.  In other words, the court finds that compassionate release would materially depart from an appropriate § 3553(a) sentence.  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring the consideration of applicable § 3553(a) factors if court finds that extraordinary and compelling reasons warrant reduction).  The § 3553(a) factors include (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.  *See* 18 U.S.C. § 3553(a)(1)–(6).  Applying those factors here, the court declines to reduce defendant's sentence.

As the court emphasized at defendant's sentencing hearing when it overruled defendant's objection to a 4-level enhancement under § 3B1.1(a), defendant orchestrated the extensive and sophisticated fraud scheme at issue in this case.  The court also rejected defendant's suggestion that he was only involved in the scheme in its initial stages and should only be held accountable for a fraction of the total losses.  In fact, the court found that defendant never withdrew from the scheme and attributed the entire amount of the loss—more than $650,000—to defendant.  Yet in his reply brief, defendant still insists that he was involved in the fraudulent scheme for only 8 months and should only be accountable for roughly $80,000 in losses.  He refuses to acknowledge his culpability and continues to

blame others for his role in the offense. In these circumstances, it is apparent to the court that continued incarceration is necessary to comply with § 3553(a). This is particularly true in light of the fact that the sentencing judge sentenced defendant to the low end of the range. Anything short of that sentence, in the court's view, would represent a windfall to defendant. The court remains convinced that defendant must serve the length of that sentence despite the potential risk to defendant's health in light of COVID-19. United States v. Clark, 2021 WL 1140690, at *3 (D. Kan. Mar. 25, 2021) (denying compassionate release in part because defendant refused to acknowledge his culpability); *United States v. Tsosie*, 2021 WL 763976, at *3 (D. Ariz. Feb. 26, 2021) (denying compassionate release in part because defendant showed a lack of remorse and refused to accept responsibility for his crime); *United States v. Kolodesh*, 2020 WL 5292145, at *3 (E.D. Pa. Sept. 4, 2020) (compassionate release not warranted where defendant was not remorseful for criminal acts and consistently blamed others for his conduct).

The court is also convinced that continued incarceration is necessary in light of defendant's lengthy—and often violent—criminal history. At the time of his sentencing, defendant had ten prior felony convictions, three of which were violent assaults and one of which was an involuntary manslaughter conviction stemming from a vehicular accident where defendant fled the scene. HIs criminal history also includes other instances of fraud and deceit, including taking advantage of victims of Hurricane Ivan by accepting payment for home repair work and then failing to perform that work and accepting earnest money for the purchase of a home that he did not own. The court, then, cannot conclude that defendant is a proper candidate for compassionate release. United States v. McIntyre, 2021

WL 1226556, at *4 (W.D.N.C. Mar. 31, 2021) (denying compassionate release in light of defendant's lengthy criminal history, the nature of his crimes, and his risk of recidivism); United States v. Cook, 2021 WL 67208, at *2 (W.D. Mo. Jan. 7, 2021) (defendant's lengthy criminal history and recidivism weighed in favor of further incarceration); *United States v. Davila*, 2020 WL 6499562, at *3 (D. Conn. Nov. 5, 2020) (denying motion for compassionate release despite increased vulnerability to COVID-19 where defendant had substantial criminal history and demonstrated recidivism).

For these reasons, defendant's release from custody would be inconsistent with public safety, the need to provide just punishment; and the need to promote respect for the law and would fail to reflect the seriousness of his offenses. In short, continued incarceration is appropriate as defendant's sentence remains sufficient but not greater than necessary to serve the purposes of sentencing. The motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's second emergency motion for compassionate release (doc. 269) is denied and his motion in opposition of any request by the government for an extension of time (doc. 273) is moot.

**IT IS SO ORDERED.**

Dated this 15th day of April, 2021, at Kansas City, Kansas.

*s/ John W. Lungstrum*
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**